UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STANLEY TILLMAN, | ) | CASE NO. 1:07 CV 2066 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| SPEEDWAY AMERICA, INC., et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On July 11, 2007, pro se plaintiff Stanley Tillman filed this action under 42 U.S.C. § 1983.

and Title VII, 42 U.S.C. § 2000e against Speedway America, Inc. ("Speedway"), John Doe

Speedway Clerk, and Jane Doe Speedway Manager. In the Complaint, Plaintiff alleges a Speedway

employee made unwanted sexual advances toward him. He seeks $ 3,800,000.00.

## Background

Mr. Tillman contends he stopped at a Speedway gas station at the intersection of Park West

Avenue and Brookpark Way in Mansfield, Ohio on July 3, 2006.[1] He states that upon entering the

---

[1]    Mr. Tillman states he stopped at the station on July 3, 2007. He later indicates the incidents
took place in 2006. In view of the fact that Mr. Tillman began serving a 2 year robbery sentence
in the North Central Correctional Institution on June 1, 2007, the court concludes that the events
described took place in 2006.

store to purchase a beverage, John Doe Clerk called out, "now there's a fine black man." (Compl. at 3.) Mr. Tillman claims the clerk then came out from behind the counter and, in full view of the other patrons, rubbed his body against Mr. Tillman in a sexually suggestive manner. He indicates he rebuffed the man's advances but was very embarrassed by the incident.

Three days later, on July 6, 2007, Mr. Tillman returned to the Speedway and upon entering the store, noticed the same clerk behind the counter. He claims the clerk walked out of his work station to follow Mr. Tillman as he announced, "you the man I want." (Compl. at 4.) He indicates he again rebuffed the clerk's advances to no avail. Mr. Tillman states the clerk proclaimed it was "hug a gay day" and inquired whether Mr. Tillman disliked homosexuals. (Compl. at 4.) He alleges he asked the clerk to stop pursuing him but the clerk ignored his request and informed Mr. Tillman he could obtain free merchandise from the store if he established a physical relationship with the clerk. He indicates other patrons observed the interaction which caused him great embarrassment.

Nevertheless, Mr. Tillman returned to the store the following day with his son. John Doe Clerk was again working behind the counter along with another clerk. Mr. Tillman claims he and his son entered the restroom and discovered the clerk had followed them. Mr. Tillman states the clerk approached him in a suggestive manner which Mr. Tillman rebuffed. He claims the clerk told his son he could obtain free ice cream if Mr. Tillman would engage in sexual activity. Mr. Tillman again told the clerk to terminate the behavior and escorted his son to their vehicle. Mr. Tillman returned to the store and complained to Jane Doe Manager. He contends he was told nothing could be done and was advised to ignore the comments.

Two days later, on July 12, 2006, Mr. Tillman brought his girlfriend to the Speedway and went into the store to purchase refreshments. John Doe Clerk was once again working behind the

counter. Mr. Tillman approached him and requested an Application for a Speedy Rewards Card. He claims that while he was filling out the information card, the clerk began making unwanted sexual advances toward him. Mr. Tillman claims he asked the clerk to please stop the behavior. Later that evening, Mr. Tillman received a call on his cellular phone from John Doe Clerk. The clerk indicated he obtained the telephone number from Mr. Tillman's Speedy Rewards Application. He made several comments of a sexual nature before Mr. Tillman terminated the call. He claims John Doe Clerk called back a total of thirty times that evening before he "finally had to take [the] phone off the hook." (Compl. at 6.) Mr. Tillman states the telephone calls continued in a similar fashion for several weeks.

On July 14, 2006, two days after completing the Speedy Rewards Application. Mr. Tillman returned to the Speedway station with his cousin. John Doe Clerk was behind the counter along with another clerk. He indicates the store was very busy and there were long lines of customers waiting to make their purchases. Mr. Tillman claims John Doe Clerk loudly proclaimed, "I got to hurry up, honey; there's a man I want." He then allegedly put a closed sign up by his register, proceeded to the spot in line where Mr. Tillman stood, and attempted to hug him. He claims other patrons laughed at him causing him to feel humiliated. His cousin also questioned the relationship of Mr. Tillman and the Clerk. He contends the incident caused strained family relations.

Ten days later, Mr. Tillman returned to the Speedway store. He claims John Doe Clerk was in the parking lot smoking a cigarette when he pulled into the station. As Mr. Tillman exited his car, the clerk began making comments of a sexual nature to Mr. Tillman. He claims that at that moment, a car containing several women pulled up next to Mr. Tillman and "upon seeing him began whistling." (Compl. at 3.) He contends the clerk then turned away from Mr. Tillman, dropped his

-3-

trousers and exposed his buttocks. Mr. Tillman complained to Jane Doe Manager for a second time.

Mr. Tillman stopped at Speedway station on August 2, 2006. John Doe Clerk was working behind the counter. Mr. Tillman went into the restroom and was followed by John Doe Clerk. Mr. Tillman contends the clerk locked the bathroom door and attempted to make physical contact with Mr. Tillman. He claims he informed the Clerk he was not interested in having that type of relationship and left the room.

Apparently undeterred by his string of negative experiences at the Speedway, Mr. Tillman continued to frequent the business on a regular basis. He details similar experiences which took place on August 9, 2006, August 14, 2006, and August 18. 2006. On one of those occasions, John Doe Clerk allegedly exposed himself to Mr. Tillman for a second time. All the same, Mr. Tillman returned to the Speedway station with his daughter on August 21, 2006 to obtain ice cream. Mr. Tillman indicates the same clerk was working when they entered the store. He claims John Doe Clerk came around to the customer side of the counter and once again began making comments of a sexual nature to him in the presence of his minor child. Mr. Tillman states he found the experience to be very upsetting. He alleges that in order to get away from John Doe Clerk, he moved across town on September 1, 2006 and changed his cellular telephone number.

Mr. Tillman claims he is entitled to relief from John Doe Clerk. Jane Doe Manager and Speedway. He seeks relief under Title VII claiming the clerk's actions created a "hostile and offensive environment for himself, and his girlfriend and children because he was a man." (Compl. at 10.) He contends he suffered "very severe emotional distress from the defendants' intentional actions." Finally, he asserts his "civil rights were from sex discrimination and/or harassment were knowingly and unknowingly violated by Def. Speedway for hiring a someone [sic] with [an]

-4-

'alternate lifestyle.'" (Compl. at 11.)

### *Analysis*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

### I. **Title VII**

Mr. Tillman first claims the clerk created a hostile environment for him which is prohibited by Title VII. While Title VII does provide a cause of action for claims of hostile environment sexual harassment, it is limited to situations which arise in the context of plaintiff's place of employment. Fenton v. HiSAN, Inc., 174 F.3d 827, 829-30 (6th Cir.1999). Mr. Tillman is not employed by Speedway. Title VII is inapplicable to the facts presented in this case.

### II. **42 U.S.C. § 1983**

In addition, Mr. Tillman contends the defendants violated his rights under the Fifth and Fourteenth Amendments. Because the Constitution does not directly provide for damages, plaintiff

---

[2]     An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

must proceed under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations. Sanders v. Prentice-Hall Corp. Sys, 178 F.3d 1296 (6th Cir. 1999). As no other statutory provision appears to present an even arguably viable vehicle for the assertion of plaintiff's claims, the court construes these claims as arising under 42 U.S.C. § 1983.

To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). There is nothing in the complaint which indicates that Speedway, John Doe Clerk or Jane Doe Manager obtained any assistance from the state to carry out the conduct alleged in the pleading. None of the defendants therefore can be construed as a state actor for purposes of § 1983.

### III. Intentional Infliction of Emotional Distress

Finally, it appears Mr. Tillman is attempting to assert a claim for intentional infliction of emotional distress. This claim would arise, if at all, under state tort law. It is not a federal cause of action. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a

-6-

single trial. United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966). The court, however, may exercise discretion in hearing state law matters. Id. at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. Id. Having dismissed plaintiff's federal law claims, this court declines jurisdiction to hear Mr. Tillman's state law claim.

## *Conclusion*

Accordingly, plaintiff's federal claims are dismissed with prejudice pursuant to 28 U.S.C. §1915(e). His state law claim is dismissed without prejudice. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

FILED

OCT 1 9 2007

CLERK OF COURTS
U.S. DISTRICT COURT, N.D.O.
CLEVELAND

---

[3]    28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

-7-